UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CHRISTINE HUDSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:07-CV-117 CAN |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On March 19, 2007, Plaintiff Christine Hudson (Hudson) filed her complaint in this Court.  On July 24, 2007, Hudson filed an opening brief and she asks this Court to enter judgment in her favor or to remand this matter to the Commissioner.  On August 10, 2007, Defendant Social Security Administration (SSA) filed its response brief.  On September 10, 2007, Hudson filed her reply brief.  This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On April 27, 2000, Hudson filed her application for Disability Insurance Benefits (Tr 45).  Hudson is insured for Disability Insurance Benefits through December 31, 2001 (Id.).  Hudson claims she is entitled to benefits pursuant to Title II and XVI of the Social Security Act.  See 42 U.S.C. §§ 423, 1381a.

On February 20, 2002 and on May 26, 2004, Hudson appeared at her first hearing before an Administrative Law Judge (ALJ) (Tr. 58, 1024, 1056).  After the first hearing, the ALJ found Hudson not disabled, but the Appeals Council remanded the matter back to the ALJ for a second

hearing (Tr. 45).  After the second hearing, the ALJ found that Hudson had the residual functional capacity (RFC) to perform light work (Tr. 51).  The ALJ found, additionally, that Hudson was not able to reach extreme postures of stooping, kneeling, and bending more than occasionally, and the ALJ found that she could not carry more than 20 pounds occasionally and 10 pounds frequently (Tr. 51).  The ALJ also found that Hudson could walk and stand for two hours continuously (Id.).   Based on this RFC, the ALJ determined that Hudson was able to perform her past work and other work that existed in significant numbers in the national economy (Tr. 57-58).  Therefore, the ALJ found that Hudson was not disabled (Tr. 58).

Hudson appealed the ALJ's decision to the Appeals Council.  (Tr. 13-15)  The Appeals Council denied review, and as a result, the ALJ's decision became the Commissioner's final decision (Id.).  20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005).  Consequently, on March 19, 2007, Hudson filed a complaint in this Court seeking a review of the ALJ's decision.  On June 20, 2007, this case was re-assigned to the undersigned based upon the consent of the parties.  This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

**II.     ANALYSIS**

     A.     Facts

Hudson was 51 years old at the time she applied for benefits (Tr.650).  She never finished high school, but she has a GED (Tr. 1031).  Hudson has prior work experience as a crossing guard, a driver, and a security guard (Tr. 1031-32).

Hudson alleges that she is disabled from a variety of problems that cause her severe pain including fibromyalgia,[1] chondromalcia patella,[2] and joint problems with her knees and shoulder (Tr. 417).  Hudson also claims that she suffers from depression (Tr. 1044-45 ).  Hudson claims that these problems cause her so much pain that she is basically bed-ridden and unable to work (Tr. 1045).  Hudson also claims that her mental illnesses do not allow her to work (Id.).

Hudson saw many doctors, and one of the main issues is whether the ALJ properly considered these physicians and awarded them the proper amount of evidentiary weight.  The other issues this Court must resolve are: whether the ALJ properly assessed Hudson's credibility, whether the ALJ appropriately found Hudson could perform light work, and whether the ALJ correctly found that Hudson could perform her past work as a security guard.

B.     Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error.  See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003).  Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972).  A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.  Haynes, 416 F.3d at 626.  An ALJ's decision cannot stand if it lacks evidentiary

---

[1] Fibromyalgia is a common syndrome of chronic widespread soft tissue pain accompanied by weakness, fatigue, and sleep disturbances, the cause of which is unknown.  Stedman's Medical Dictionary 725 (28th ed. 2006).

[2] Softening of the cartilage in or around the surface of the knee Stedman's Medical Dictionary 369, 1441.

support or an adequate discussion of the issues.  Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).  However, an ALJ's legal conclusions are reviewed *de novo*.  Haynes, 416 F.3d at 626.

   C.  Hudson's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Hudson must establish that she was "disabled."  See 42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: 1) the claimant is presently employed; 2) the claimant has a severe impairment or combination of impairments, 3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, 4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and 5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If there is an affirmative answer at either step three or step five, then there is a finding of disability.  Briscoe, 425 F.3d at 352.  At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant

4

can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

    1. <u>The ALJ's evaluation of Hudson's physicians is supported by substantial evidence</u>

An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). "This rule . . . seems to take back with one hand what it gives with the other, and as a result, to provide little in the way of guidance to either." Id. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(d)(2); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. Hofslien, 439 F.3d.at 377 (citations omitted). Hudson argues that the ALJ failed to properly discount each and every one of her treating physicians.

    a. Dr. Swanson, Dr. Baran, and Dr. Salcedo[3]

---

[3] Hudson also points to Dr. Heller, but she does not indicate what opinions from Dr. Heller the ALJ failed to adopt or whether the ALJ committed an error with regards to Dr. Heller. Dr. Heller saw Hudson twice in 2000, but he did not offer any medical opinions that the ALJ failed to adopt. Dr. Heller indicated that she needed surgery, an observation that the ALJ noted in his opinion (Tr. 52, 570). Because Hudson has failed to articulate why the ALJ committed error with regards to Dr. Heller, this Court finds that Hudson has waived any arguments relating to Dr. Heller.

5

Hudson argues that Dr. Swanson, Dr. Baran, and Dr. Salcedo had opinions that support Hudson's claim that she is disabled.  These physicians were not treating physicians.  A physician is not a treating physician unless he or she has an ongoing relationship with the claimant.  White v. Barnhart, 415 F.3d 654, 658 (7th Cir. 2005).  The record reveals that Dr. Swanson, Dr. Baran, and Dr. Salcedo each saw Hudson once or twice  (Tr. 567-69, 646-47, 668).  Because these physicians were not treating physicians, the ALJ was not required to indicate why he did not assign these physicians controlling weight, and essentially, it was the ALJ's decision to decide how much weight to apportion to these physicians.

Because Dr. Swanson, Dr. Baran, and Dr. Salcedo were not Hudson's treating physicians, all the ALJ was required to do was establish a logical bridge in reaching his conclusions.  Here, the ALJ pointed to a variety of other evidence in the record to make his RFC determination with regards to Hudson (Tr. 45-58).  For example, he gave more weight to the opinions of Dr.s Cecelles and Mohr that Hudson's claims were unremarkable or not as severe as she claimed (Tr. 53).  An ALJ is entitled to reject a non-treating physician's opinions in favor of other physicians' opinions and evidence in the record.  Haynes, 416 F.3d at 631.  Also, the ALJ relied on the opinions of Dr. Swanson himself where he indicated Hudson was actively exercising and using medication to relieve her problems, which conflicts with the statements by Dr. Swanson that Hudson argues are favorable to her (Tr. 52, 567).  "[I]f conflicting medical evidence is present, the [ALJ] has the responsibility of resolving the conflict."  Diaz v. Chater, 55 F.3d 300, 306 n.2 (7th Cir. 1995).  Dr. Swanson, Dr. Baran, and Dr. Salcedo were not Hudson's treating physicians.  Their opinions were not entitled to controlling weight, and how much weight each physician's opinion was entitled to, or which part of those opinions to assign weight, was a

6

finding of fact left to the discretion of the ALJ.  This Court will not re-weigh the evidence as Hudson asks with regards to Dr. Swanson, Dr. Baran, and Dr. Salcedo.

        b.  Dr. Mohr

  Dr. Mohr is a rheumatologist who began treating Hudson on October 19, 2000 (Tr. 613). Upon examination of Hudson, Dr. Mohr found several severe tender points, that Hudson was in pain, and he diagnosed her with severe fibromyalgia (Tr. 613-14).  On January 31, 2002, Dr. Mohr completed a fibromyalgia impairment questionnaire (Tr. 662).  He noted that Hudson also had knee problems that caused her pain, that she was on several medications including pain medications, and that her pain was "constant" (Tr. 662, 664).

  The ALJ declined to award Dr. Mohr controlling weight (Tr. 53).  The ALJ noted that Dr. Mohr failed to complete the report, and that Dr. Mohr only generated his opinion based on Hudson's complaints (Id.).  Also, the ALJ pointed out that Dr. Mohr himself indicated that some of Hudson's tender points, particularly in her legs were "unremarkable" (Id.).  Therefore, the ALJ did not award Dr. Mohr controlling weight.

  Hudson argues that the ALJ failed to give controlling weight to Dr. Mohr's assessments of Hudsons pain.  Hudson does not argue that the ALJ's explanation is flawed, but instead, Hudson points to a variety of Dr. Mohr's findings and asks this Court to assign more weight to some of those findings than the ALJ did.  Hudson misunderstands the role of this Court.  This Court is not to re-weigh evidence, it is only to determine whether the ALJ's explanation that Dr. Mohr's opinions are not entitled to controlling weight was reasonable.

  This Court finds that the ALJ appropriately and adequately explained why Dr. Mohr was not entitled to controlling weight.  If the ALJ explains why medical evidence is either internally

7

inconsistent or inconsistent with other evidence in the record, so long as that explanation is reasonable based on the record, his decision will be supported by substantial evidence. Clifford, 227 F.3d at 870. The ALJ indicated that Dr. Mohr did not detail how or if he performed any thorough objective corroborating exams to support his medical findings, and the ALJ specifically noted that Dr. Mohr desired a "quantitative physical capacity evaluation" that was never done (Tr. 53). The ALJ indicated that the lack of objective evidence or testing to support Dr. Mohr's conclusions, either internally within Dr. Mohr's notes or through other medical evidence, rendered his opinions unpersuasive. This Court has not found any evidence in the record that the ALJ failed to consider that suggests his conclusion was patently wrong or his analysis incomplete. The ALJ's explanation was adequate and his conclusion was reasonable. As a consequence, the ALJ's decision not to adopt Dr. Mohr's opinions that Hudson was disabled from pain, or suffering from debilitating pain, was supported by substantial evidence.

              c.        Dr. DeCelles

Dr. DeCelles first began seeing Hudson around August of 2000 and saw her a number of times thereafter (Tr. 619-45, 775-94). Dr. DeCelles found that Hudson suffered from fibromyalgia, headache pain, and other pain causing complications (Tr. 620, 792, 805). Based on Hudson's pain complications, Dr. DeCelles opined that Hudson's pain and fatigue fluctuated, on a scale of 1 to 10, from 2 to 10 at any given time, that she could sit for only four consecutive hours, that she could stand for only 1 hour at a time, her pain medication was ineffective, she could lift 10 pounds occasionally but not more than 20 pounds, and moderately and markedly limited in her ability to ambulate and manipulate objects with her hands (Tr. 805-811).

8

The ALJ did not award Dr. DeCelles controlling weight because Dr. DeCelles appeared to regard Hudson's claims "critically, if not doubtfully" (Tr. 53).  The ALJ indicated that "the claimant's internists observed problems, but did not endorse permanent impairments that were disabling prior to the expiration of her insured status" (Id.).  Then, the ALJ pointed to specific evidence of Dr. DeCelles's treatment notes to exemplify and support this finding.  He indicated that during her many meeting with Dr. DeCelles she indicated that her headaches had come under control, that Dr. DeCelles indicated he did "not find much" in one of his examinations in relation to her legs, and that Dr. DeCelles even noted Hudson's "history of questionable anxiety/depression" (Id.).

This Court finds the ALJ's explanation and decision to not award Dr. DeCelles controlling weight was supported by substantial evidence.  Essentially the ALJ found that Dr. DeCelles's opinion was internally inconsistent.  Medical evidence may be discounted if it is internally inconsistent.  Clifford, 227 F.3d at 870.   The ALJ adequately explained that parts of Dr. DeCelles's treatment notes were not consistent with his ultimate conclusion, and the ALJ specifically referred to specific parts of Dr. DeCelles's opinions as evidence that inconsistencies existed to support his conclusion.  This Court cannot say this decision was not reasonable.

This Court notes that the objective evidence not cited by the ALJ supports this determination.  During his treatment of Hudson, he noted at one point that her fibromyalgia was stable with medication (Tr. 621).  Dr. DeCelles even noted in 2002 that Hudson was "doing fairly well" (Tr. 783).  While this Court is not re-weighing the evidence and assigns no weight to these observations, this situation is not one where an overwhelming amount of evidence in the record is contrary to the ALJ's determination.  Hudson may believe that certain statements made

9

by Dr. DeCelles are entitled to more weight than the ALJ afforded them, but this Court's only role it to determine if the ALJ adequately explained why Dr. DeCelles was not entitled to controlling weight. Because the ALJ proffered a reasonable explanation, all of Dr. DeCelles's opinions and findings were simply pieces of evidence for the ALJ to assign whatever weight he sought fit.

### d. Dr. Yu

Hudson did not begin seeing Dr. Yu until 2002, which was after the relevant time period of December 31, 2001 (Tr. 1001).[4] Dr. Yu opined that Hudson could not work because of her pain implications, and that she could not lift more than 20 pounds due to her spinal issues and depression (Tr. 796). Dr. Yu also opined that Hudson was basically bed ridden (Tr. 1022). Dr. Yu opined that Hudson's symptoms and limitations began in 1992 (Tr. 774).

The ALJ opined that Dr. Yu's opinion is "apparently based upon what the claimant told him about her lifestyle and not upon observations during the examination," and that "Dr. Yu's rehabilitation clinic notes do not support limitations as great as he marks on the sheet" (Tr. 54). The ALJ ultimately concluded that the limitations Dr. Yu found "are not consistent with the claimant's own account of activity" (Id.).

Hudson argues that the ALJ should have given more weight to the opinions of Dr. Yu. The ALJ's opinion reveals that he properly discounted Dr. Yu's opinion. The ALJ indicated that he considered Dr. Yu's opinion, but he found it was entitled to little weight because his opinion was not based on anything other than the claimant's own statements (Tr. 54). Also, the ALJ

---

[4]Even though evidence from Dr. Yu is after the relevant time period of December 31, 2001, the ALJ was required to consider the evidence from Dr. Yu to determine whether it supported Hudson's claim of disability during the relevant time period. See Blom v. Barnhart, 363 F. Supp. 2d 1041, 1049 n. 6 (E.D. Wis. 2005); Nelson v. Callahan, 1997 WL 403516 at * 6 (N.D. Ill. 1997).

indicated that Dr. Yu's assessment was not consistent with Hudson's own claims of her daily activities. Earlier in the opinion, the ALJ referenced Hudson's daily activities as going to the grocery store, cooking, sitting and watching baseball games, and taking care of her own personal hygiene (Tr. 50). The ALJ provide an adequate analytical bridge for not awarding Dr. Yu controlling weight, and how much weight to award Dr. Yu was a fact finding determination within the province of the ALJ. The ALJ's evaluation of Dr. Yu was supported by substantial evidence.

e. Dr. Allikarjun

Dr. Allikarjun saw Hudson from July 25, 2003, to December 16, 2003 (Tr. 927). Dr. Allikarjun opined that Hudson suffered from major depression and would need to miss work at least three times per month (Tr. 927-934). Dr. Allikarjun also found that Hudson had marked limitations in her ability to work with others without becoming distracted or to interact with the public (Id.).

The ALJ found that,

> [t]he foundation of Dr. [Allikarjun]'s [sic] report is also unclear. He notes a treating relationship of five months with as much as three months between visits. This may mean that his relationship is not strong enough to warrant weight to his evaluation (Tr. 56).

This Court finds that the ALJ's determination that Dr. Allikarjun was not a treating physician was supported by substantial evidence. A physician is not a treating physician unless he or she has an ongoing relationship with the claimant. White v. Barnhart, 415 F.3d 654, 658 (7th Cir. 2005). An ongoing relationship is one in which "the medical evidence establishes that you see or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for . . . medical condition(s)." 20. C.F.R. § 404.1502.

11

The record does not reflect how many times Hudson met with Dr. Allikarjun. The only document from Dr. Allikarjun is a impairment questionnaire, which does not indicate how many times Hudson met with Dr. Allikarjun. Therefore, the ALJ's determination that Dr. Allikarjun relationship was not strong enough to warrant weight is supported by substantial evidence.

In summary, the ALJ adequately explained why Hudson's treating physicians were not entitled to controlling weight, and how much weight to assign to Hudson's non-treating physicians was a finding of fact left to the ALJ. The ALJ's assessment of Hudson's physicians was supported by substantial evidence.

### 2. The ALJ's evaluation of Hudson's credibility was supported by substantial evidence

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). Social Security Ruling 96-7p requires an ALJ to articulate specific reasons in a credibility finding. Golembiewski, 322 F.3d at 915; Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. Golembiewski, 322 F.3d at 915. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887. When an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is

12

greater freedom to review the ALJ's decision. Clifford, 227 F.3d at 872. However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

The ALJ provided several reasons for finding Hudson to be not credible. The ALJ found that Hudson's demeanor was defensive, and that her style of answering implied that the claimant scrambled for responses (Tr. 51). The ALJ also found that "when apparent conflicts or extreme allegations of total incapacity were reviewed, the claimant showed behaviors that reflected a sense of uncertainty and unease" (Id.). This finding by the ALJ is specifically the type of finding where the ALJ is given deference because he is in a special position to see, hear, and judge the witness. See Jens 347 F.3d at 213. Furthermore, the ALJ bolstered this subjective finding by pointing to Hudson's exaggerations and inconsistent testimony.

The ALJ indicated that Hudson has a tendency to exaggerate (Tr. 50). The ALJ did not simply state that Hudson was exaggerating, but instead, he went further and cited evidence and examples to support his conclusions. The ALJ found Hudson's testimony that neither she nor her daughter that she lived with took care of her daughter's infant son was illogical (Id.). As another example, the ALJ found that Hudson exaggerated her responsibilities of her piror work by implying her contributions as a security guard had large impacts on the company's business aspects (Tr. 50-51). The evidence and examples cited by the ALJ support a reasonable finding that Hudson tended to exaggerate.

The ALJ also found that Hudson's testimony was inconsistent (Tr. 50). Again, the ALJ pointed out specific reasons why he believed Hudson's claims were inconsistent. The ALJ

13

explained that at one point Hudson claimed she was basically bed-ridden; however, she indicated in other parts of her testimony that she went out to the grocery store and cooks, which was contradictory to a bed-ridden life (Id.).  The ALJ also found the account from Hudson's son that Hudson cooks small meals, cooks large meals on some occasions, often goes out to eat, reads newspapers and magazines, and watches and follows entire baseball games to be inconsistent with Hudson's claim that she was bed-ridden (Id.)  The ALJ accurately cited evidence from the record, and this Court finds that his conclusion that Hudson's testimony was inconsistent was also a reasonable conclusion.

The ALJ provided a solid analytical bridge and reached a reasonable conclusion in assessing Hudson's credibility.  The ALJ provided reasons why he determined Hudson's testimony was not credible and he explained how he reached those conclusions.  While Hudson argues that the ALJ did not address every piece of evidence in the record that may or may not support his decision, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence."[5]  Rice, 384 F.3d at370.   This Court finds that the ALJ's evaluation of Hudson's credibility is supported by substantial evidence.

### 3. The ALJ's RFC finding is supported by substantial evidence

Hudson argues that the ALJ erred by finding she could perform light work.  In order for the ALJ to have erred in formulating Hudson's RFC, he either would have had to inappropriately assess either Hudson or Hudson's physicians' credibility, or he must have failed to consider an entire line of evidence.  This Court has found that the ALJ committed neither error.

---

[5]Hudson repeatedly cites to parts of her testimony to show how the ALJ's assessment that Hudson exaggerated or was inconsistent was incorrect.  However, it is long established that is the ALJ's role and not this Court's to resolve conflicts in testimony.  Uphill v. Barnhart, 271 F. Supp. 2d 1086, 1094 (E.D. Wis. 2003).

Consequently, the ALJ's finding that Hudson could perform light work was supported by substantial evidence.[6]

    4.    <u>The ALJ's finding that Hudson was not disabled at age 55 is supported by substantial evidence</u>

Hudson also argues that when she turned 55 in February of 2004, regulation 20 C.F.R. 404, subpart P, Appendix 2, section 202.00(c) commands a finding of disability. As a result, Hudson argues that the ALJ should have found her disabled because he did not issue his opinion until after February of 2004. However, the relevant time period for Hudson's claim of disability ends on December 31, 2001. The ALJ had to determine whether Hudson was disabled at that time. Thus, even though the ALJ did not issue his final decision until after this date, his decision was about Hudson's capacity at that time. Therefore, the fact that Hudson turned 55 before a final decision has no bearing on the ALJ's determination. <u>See</u> <u>Schmidt v. Barnhart</u>, 395 F.3d 737, 742 (7th Cir. 2005) (indicating evidence is material only if it relates to condition during relevant time period).

    5.    <u>The ALJ's evaluation under step 4 is supported by substantial evidence</u>

Finally, Hudson contends that the ALJ committed an error under step 4 of his analysis that she could perform her past work as a security guard. As part of the ALJ's RFC determination, he found:

---

[6]Hudson argues that when she turned 50 in February of 1999, the ALJ should have found her disabled under regulation 20 C.F.R. § 404, subpart P, appendix 2, section 201.00(g), which states:
> [i]ndividual approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to <u>sedentary work</u>. When such individuals have no past work experience or can be longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains.

(emphasis added). Because the ALJ appropriately found that Hudson had the ability to perform light work rather than sedentary work, regulation 20 C.F.R. § 404, subpart P, Appendix 2, section 201.00(g) does not warrant a finding of disability.

15

>[t]he limitations of her ability to engage in social functioning prevented her from addressing work that imposes intense contact with the public or strangers. Such a position exposes a person to the emotional challenges of strangers who may have a personal response that disturbs sensitive employees. Customers with emergencies or extreme dissatisfaction with service or products can display emotions that make public contact too uncomfortable for the claimant (Tr. 54).

The ALJ found under step 4 that Hudson's RFC allowed her to perform her past work as a security guard. The ALJ based this determination on the testimony of a VE, who indicated that a person with Hudson's RFC could perform the work of a security guard. Hudson contends that the ALJ's reliance on the VE's testimony was erroneous because the Dictionary of Occupational Titles (DOT) description of a security guard indicates that a person with Hudson's RFC could not work as a security guard. Specifically, Hudson contends that the DOT indicates that the position of a security guard requires interaction with the public, such as by warning violators of rule infractions for example, which conflicts with the ALJ's finding that Hudson could not interact with the public. Therefore, because the VE's opinion that Hudson could work as a security guard was flawed because it conflicted with the DOT, Hudson argues it was improper for the ALJ to rely on the VE in his finding under step 4 that Hudson could do her past work.

Under SSR 00-4p, an ALJ may rely on VE testimony as substantial evidence so long as the ALJ asks the VE how his testimony corresponds with the DOT. Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006); Donahue v. Barnhart, 279 F.3d 441, 445-46 (7th Cir. 2002). The ALJ must elicit a reasonable explanation for any discrepancy. Prochaska, 454 F.3d at. 735. In the present case, the ALJ asked the VE about the job requirements for Hudson's past work, including her work as a security guard (Tr. 756-58). The ALJ also asked if any of the VE's opinions conflicted with the DOT, to which the VE responded they did not (Tr. 758). Consequently, the ALJ satisfied the procedural requirements for relying on the VE's opinion.

Furthermore, this Court cannot say that the ALJ's reliance on the VE was erroneous. While the DOT mentions some interaction with the public regarding the requirements for the job of a security guard, none of those requirements directly conflict with the ALJ's RFC determination. Most notably, the DOT indicates many times that a person "may" have interaction with the public but not necessarily, and any possible interactions with the public that the DOT lists are not of the intense contact that the ALJ limited Hudson too in his RFC finding. Simply put, once the ALJ has asked the VE if his description of a job conflicts with the DOT, unless there is a blatant and obvious conflict, the ALJ's decision to rely upon and adopt the VE's testimony is reasonable. See generally Hackett v. Barnhart, 395 F.3d 1168, 1175-77 (10th Cir. 2005); SSR 00-4p (indicating that ALJ required to resolve actual conflict or inconsistencies between DOT and VE testimony). The ALJ's step 4 analysis is supported by substantial evidence.

### III. CONCLUSION

For the reasons stated, the ALJ's findings were supported by substantial evidence. Therefore, Hudson's motion for remand or judgment in her favor is **DENIED** [Doc. No. 17]. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four (4) of 42 U.S.C. § 405(g).[7] The clerk is instructed to term the case and enter judgment in favor of the SSA.

---

[7] Hudson takes issue with the ALJ's statement that she was not disabled from 1996 through the date of this decision. This statement does not appear to be a finding that Hudson was not disabled after the relevant time period, but only that all of the evidence up to the point of his decision did not establish that Hudson was disabled during the relevant time period. The ALJ reiterated at the very end of his opinion that Hudson is not entitled to "a period of

**SO ORDERED.**

Dated this 19TH day of February, 2008.

                                                        S/Christopher A. Nuechterlein
                                                       Christopher A. Nuechterlein
                                                       United States Magistrate Judge

---

disability . . . benefits." The SSA also does not dispute that the ALJ's finding was limited to the relevant time period.  Thus, Hudson is correct that the ALJ's decision that Hudson was not disabled is limited to the relevant time period.